**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Walker and Judith Walker, | No. CV-23-01641-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| AIU Insurance Company and Gallagher Bassett Services Incorporated, | |
| Defendants. | |

Pending before the Court is Defendant Gallagher Bassett Services Incorporated's ("Gallagher") Motion to Dismiss (Doc. 7) and Defendant AIU Insurance Company's ("AIU") Motion to Dismiss (Doc. 9). Plaintiffs Donald and Judith Walker ("the Walkers") have responded. (Docs. 11, 13). Gallagher and AIU have replied. (Docs. 12, 15). The Court now rules.

**I.   BACKGROUND**

The following summary of facts is taken from the Complaint and attachments thereto. In deciding a motion to dismiss for failure to state a claim, the Court must construe the facts alleged in the Complaint in the light most favorable to the Plaintiff and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

This action was filed in Arizona Superior Court in Maricopa County and removed to federal court based on diversity jurisdiction. Plaintiffs are a cement truck driver, Mr. Walker, who filed for worker's compensation pursuant to the Arizona Worker's

Compensation Act (the "Act"), A.R.S. § 23-901 *et seq.*, and his wife, Ms. Walker. (Doc. 1, Ex. 4). Defendants are the worker's compensation insurance carrier and the third-party claims administrator ("TPA") responsible for administering Mr. Walker's disability benefits after he fell on concrete blocks and fractured his ribs and suffered left shoulder injuries on January 13, 2021. (Doc. 1, Ex. 4 at 3). A worker's compensation claim was filed on behalf of Mr. Walker with the Industrial Commission of Arizona ("ICA"). (Doc. 1, Ex. 4 at 3). The ICA has jurisdiction over worker's compensation claims in Arizona and helps provide injured workers with limited benefits in exchange for a surrender of their tort rights against the employer. (Doc. 1, Ex. 4 at 3). AIU provides worker's compensation insurance and may employ agents to administer worker's compensation claims on its behalf under Arizona law. (Doc. 1, Ex. 4 at 3). AIU contracted with Gallagher as a TPA tasked with administering claims on behalf of AIU. (Doc. 1, Ex. 4 at 3–4). Following the injury, Mr. Walker came under the care of his employer's designated provider: MBI Industrial Medicine ("MBI"). (Doc. 1, Ex. 4 at 4). He returned to work on light duty status upon obtaining treatment from MBI. (Doc. 1, Ex. 4 at 4).

On February 23, 2021, ICA tendered Mr. Walker's claim to AIG Claim Services, the predecessor of Gallagher (hereinafter referred to as "Gallagher"). (Doc. 1, Ex. 4 at 4). The Act allows Defendants twenty-one days from the date of notification to investigate the claim. Defendants may investigate the claim for longer, but they must commence payment of benefits until such time as they have issued a notice of claim status denying benefits under the claim. (Doc. 1, Ex. 4 at 4). On March 8, 2021, Gallagher and AIU issued a notice of claim status denying the claim for benefits "pending investigation." (Doc. 1, Ex. 4 at 4). On March 24, 2021, Mr. Walker underwent an MRI that revealed a low-grade laberal tear in his left shoulder. (Doc. 1, Ex. 4 at 4). On May 21, 2021, the ICA notified Gallagher that the denial of the claim "pending investigation" was in violation of the Act and directed Gallagher to either accept or deny the claim. (Doc. 1, Ex. 4 at 5). On August 3, 2021, Mr. Walker's treating orthopedic surgeon recommended surgery for his left shoulder. (Doc. 1, Ex. 4 at 5). Defendants denied authorization for surgery. (Doc. 1, Ex. 4 at 5). Mr. Walker

alleges that the denial was unfounded and without reasonable investigation or evaluation. (Doc. 1, Ex. 4 at 5).

On August 24, 2021, S. P., an agent of Gallagher, issued a notice of claim status accepting compensability of the claim, but stating that no disability benefits would be paid because Mr. Walker had not missed more than seven days of work due to the injury. (Doc. 1, Ex. 4 at 5). The Walkers allege that the designation of no time lost ("NTL") was false, not reasonably investigated, and unfounded. (Doc. 1, Ex. 4 at 5). Mr. Walker filed a request with the ICA for an investigation and hearing. (Doc. 1, Ex. 4 at 5). The investigation and hearing concerned both the wage records to determine if Mr. Walker was owed disability benefits as well as the authorization for surgery denied to him. (Doc. 1, Ex. 4 at 6). On September 22, 2021, Defendants set a periodic medical examination with a different doctor to determine whether Mr. Walker needed surgery. (Doc. 1, Ex. 4 at 6). The doctor confirmed Mr. Walker's need for the left shoulder surgery. (Doc. 1, Ex. 4 at 6). On December 14, 2021, Mr. Walker underwent closed manipulation under anesthesia to his left shoulder. (Doc. 1, Ex. 4 at 6).

Mr. Walker returned to light duty at work on January 10, 2022. (Doc. 1, Ex. 4 at 6). On return to work, he was terminated by his employer for his inability to perform regular duty as a cement truck driver. (Doc. 1, Ex. 4 at 6). He filed a request for investigation and hearings at the ICA on January 14, 2022, regarding his alleged entitlement to temporary partial disability benefits due between January 15, 2021, and December 14, 2021. (Doc. 1, Ex. 4 at 6). Mr. Walker remained symptomatic after surgery and a follow-up MRI revealed that he still had a left-shoulder labral tear. (Doc. 1, Ex. 4 at 6). His doctor requested authorization for a functional capacity evaluation which was denied by Defendants. (Doc. 1, Ex. 4 at 6). The Walkers allege that beginning in February 2022 Defendants made four sets of unreasonably late payments. (Doc. 1, Ex. 4 at 6–7). On May 16, 2022, Mr. Walker filed another request for investigation and hearings at the ICA to address Defendants' failure to pay disability benefits as requested in monthly status reports dated April 11, 2022, and May 11, 2022. (Doc. 1, Ex. 4 at 7). On May 18, 2022, Defendants had their doctor

perform another periodic medical exam. (Doc. 1, Ex. 4 at 7). He opined that the ongoing left labral problems were not due to Mr. Walker's on-the-job injury. (Doc. 1, Ex. 4 at 7). Defendants thus denied authorization for Mr. Walker to receive additional treatment despite Mr. Walker's doctor recommending surgery in June 2022. (Doc. 1, Ex. 4 at 7).

On June 22, 2022, the Defendants agreed to pay disability benefits for the period of January 15, 2021, to December 14, 2021. (Doc. 1, Ex. 4 at 7). On June 28, 2022, Defendants issued payment for temporary disability as requested by Mr. Walker in applications dated April 11, 2022, and May 11, 2022. (Doc. 1, Ex. 4 at 7). On June 30, 2022, Defendants filed a notice of claim status closing Mr. Walker's claim from active medical care and acknowledging the occurrence of a permanent unscheduled disability. (Doc. 1, Ex. 4 at 7). This closing notice included no provision concerning the payment of estimated permanent disability benefits while the ICA determined the amount due. (Doc. 1, Ex. 4 at 8). The Walkers allege that Defendants did not pay any disability benefits from July 25, 2022 until December 29, 2022. (Doc. 1, Ex. 4 at 8). Mr. Walker found other employment from August 2022 onward. (Doc. 1, Ex. 4 at 8).

On May 29, 2023, the ICA issued its "Decision Upon Hearing and Findings and Award for Continuing Benefits" which set aside the closure on June 30, 2022, and awarded coverage for treatment to the torn labrum. (Doc. 1, Ex. 4 at 8). On July 27, 2023, Mr. Walker filed a lawsuit in Maricopa County Superior Court alleging in Counts I and II that AIU and Gallagher engaged in bad faith as part of a joint venture or enterprise. (Doc. 1, Ex. 4 at 9–13.) In Count III, he requests punitive damages because he alleges Defendants acted with a deliberate purpose to serve their own interests with the knowledge of the substantial risk of harm to Mr. Walker. (Doc. 1, Ex. 4 at 13–14). Ms. Walker alleges that she suffered a loss of consortium and emotional distress. (Doc. 1, Ex. 4 at 9). Defendants removed the case to this Court on August 14, 2023, (*See* Doc. 1), and each filed a Motion to Dismiss for failure to state a claim. (Docs. 7, 9).

II.  **STANDARD OF REVIEW**

The Court may dismiss a complaint for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6) for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In reviewing a complaint for failure to state a claim, the Court "must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true," *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), but "[c]onclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss," *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

When "interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue . . . ." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). But "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Id.*

### III. ANALYSIS

Gallagher and AIU argue that each of the Walkers' claims must be dismissed because they fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court will address each count in turn.

#### A. Bad Faith

In the Complaint, the Walkers allege that Defendants operated in bad faith by unreasonably denying and delaying Mr. Walker's benefits under the Act. (Doc. 1, Ex. 4 at 9–11). The Walkers claim that Defendants engaged in denials and delays with knowledge that it was unreasonable, or alternatively, without an adequate investigation to

determine whether Defendants' conduct was reasonable or not. (Doc. 1, Ex. 4 at 9). AIU and Gallagher each argue that the bad faith claim is time-barred because they allege the Walkers did not file the Complaint within two years of Defendants' conduct at issue in the Complaint. (Doc. 7 at 6; Doc. 9 at 3).

In the insurance context, the tort of bad faith occurs in Arizona when, without a reasonable basis, an insurer intentionally denies, fails to process, or fails to pay a claim. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000). Because it is a personal injury done to another, bad faith must be "commenced and prosecuted within two years after the cause of action accrues." A.R.S. § 12-542; *see also Ness v. W. Sec. Life Ins. Co.*, 851 P.2d 122, 125 (Ariz. Ct. App. 1992). "A limitations period starts when the cause of action arises." *Ness*, 851 P.2d at 125. Therefore, the Walkers' cause of action did not arise, and their limitations period did not begin to run until Defendants had intentionally denied, failed to process, or failed to pay the Walkers' claim without reasonable basis.

*Ness* answered the question of when a claim arises—and limitations period begins to run—in the event of a questionable denial of a claim by an insurer. In that case, the Arizona Court of Appeals stated that the limitations period does not begin to run until an insurer provides an "unequivocal written denial" of a claim. *Id.*; *see also Seltzer v. Paul Revere Life Ins. Co.*, 688 F.3d 966, 970 (9th Cir. 2012) (confirming that "*Ness* supports the proposition that a claim accrues only upon the insurer's 'unequivocal written denial of the claim'" (quoting *Ness*, 851 P.2d at 125)).

Here, the Walkers filed their claim on July 27, 2023, making the limitations period any conduct occurring after July 27, 2021. On May 21, 2021, Defendants issued the Walkers a notice of denial "pending investigation." A notice of denial with a qualification like "pending investigation" is not an unequivocal written denial. Instead, Gallagher's issuance of a notice of claim on August 24, 2021, accepting compensability but refusing to pay disability benefits is far more akin to an unequivocal determination. Like in *Ness*, a statement like "pending investigation" "holds out some hope to [the Walkers] that additional benefits might be paid." *Ness*, 851 P.2d at 126. Accordingly, the statute of

1 limitations did not begin to run on May 21, 2021, and at most began to run on August 24, 2021. Therefore, the bad faith claim is timely. Thus, the Court denies Defendants' Motions to Dismiss the Walkers' First Claim for Relief: Bad Faith.

### B.   Joint Venture

In the Complaint, the Walkers allege that Gallagher may be held liable for bad faith because it was involved in a joint venture with AIU. (Doc. 1, Ex. 4 at 9, 11). In support of their joint-venture claim, the Walkers point to the fact that Gallagher was in a unique position to prevent harm when they undertook the claim administration process. (Doc. 1, Ex. 4 at 11–12). The Walkers argue that a duty for a TPA can arise as a special relationship and uses the concepts developed by Arizona Supreme Court in *Stanley v. McCarver*, 92 P.3d 849 (Ariz. 2004), as support for this notion. (Doc. 14 at 3–5). Conversely, Gallagher contends that because it does not have a contractual relationship with Mr. Walker, it does not owe any duty of good faith and fair dealing. (Doc. 12 at 2). Gallagher states that "no Arizona case has recognized that a third party administrator has a special relationship to a workers' compensation claimant and no case has imposed a duty on a third party administrator." (Doc. 12 at 3). Gallagher is correct insofar as the special relationship found in *Stanley* between a doctor and patient where no doctor-patient relationship otherwise existed has not been extended to the insurance context in Arizona. However, it also has not been expressly rejected in the insurance context either.

The duty of good faith and fair dealing arises through a contractual relationship, *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986), and is non-delegable, *Walter v. F.J. Simmons and Others*, 818 P.2d 214, 223 (Ariz. Ct. App. 1991). "A joint venture requires a contract, a common purpose, a community of interest, an equal right to control, and participation in the profits and losses." *Ingram v. Great American Ins. Co.*, No. CV-13-02265-PHX-SPL, 2016 WL 11782439 at *2 (D. Ariz. 2016) (citing *Tanner Co. v. Superior Court*, 696 P.2d 693, 695 (Ariz. 1985)). "Where a joint venture exists, each of the parties is the agent of the others and each is likewise a principal so that the act of one is the act of all." *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1138 (Ariz. 1982). In general,

a TPA, like Gallagher, has no contractual duty to the claimant and is not liable for the breach of a contractual duty of good faith and fair dealing. *See Walter*, 818 P.2d at 222 (dismissing TPA because he "owed no contractual duty to act in good faith or deal fairly with [plaintiff]"); *see also Centeno v. American Liberty Ins. Co.*, No. CV-18-01059-PHX-SMB, 2019 WL 568926 at *2 (D. Ariz. 2019) (same); *Ingram*, 2016 WL 11782439 at *3 (dismissing TPA because it did not have contractual relationship with plaintiff and did not meet *Sparks*/*Farr* joint venture factual scenario).

However, Arizona courts have found liability for a TPA when it engaged with an insurer in a joint venture, as alleged here. In *Sparks*, Republic underwrote an insurance policy and ALPHA marketed and administered the policy. 647 P.2d at 1137. ALPHA also issued certificates of coverage, billed and collected premiums, and prepared the sale brochure that convinced the employer to enroll in the insurance program. *Id.* Likewise, in *Farr v. Occidental Life Ins. Co. of California*, 699 P.2d 376 (Ariz. Ct. App. 1984), the TPA marketed the policy, collected premiums, received a commission on the collected premiums, and received a percentage of the renewal commissions. *Id.* at 386. *Farr* allowed some elements of a traditional joint venture to be lacking in the insurance context—such as profit and loss sharing and joint right to control. *Id.* Thus far, the Arizona courts have found a joint venture between an insurer and TPA only in these aforementioned cases. As the court stated in *Ingram*, "it is clear that Arizona law requires something beyond the traditional role of a third-party administrator in order to find a joint venture between an insurer and the third-party administrator." 2016 WL 11782439 at *2.

The Walkers allege that "AIU shared a financial interest in the claim handling by Gallagher Bassett, through cumulative and aggregate reduction of claim expense, resulting from Gallagher Bassett's claim-handling methods, and ongoing premium revenue from the employer." (Doc. 1, Ex. 4 at 13). They also state that "Gallagher Bassett shared a financial interest in the reduction of claim expenses for AIU, for purposes of generating good will and TPA renewals with AIU and the employer, and potentially for incentive compensation related to increased revenue savings on claims." (Doc. 1, Ex. 4 at 13). Construed in a light

most favorable to the Walkers, these factual allegations and reasonable inferences drawn therefore are sufficient to survive a motion to dismiss on the issue of whether Defendants were engaged in a joint venture; and whether both Defendants can, therefore, be liable for bad faith. Thus, the Court denies both Defendants' Motions to Dismiss on the Walkers' Second Claim for Relief: Joint and Several Liability. Because the Court is denying Gallagher's Motion to Dismiss in all respects because of Plaintiffs' joint venture theory of liability, the Court need not reach the issue of whether Gallagher might also be found liable under a "special relationship" theory at this time. Because the Court need not reach this theory at this time, the Court denies the Walkers' request to certify a question to the Arizona Supreme Court on the issue of a "special relationship" in this context.

### C.   Punitive Damages

Defendants' motions request dismissal of the punitive damages claim "should the Court find the claims of bad faith and joint venture are subject [to] dismissal." (Doc. 15 at 7). However, neither Defendant develops its arguments beyond stating the legal standard for when a punitive damages claim can survive a motion to dismiss. The Walkers have alleged evidence that Defendants were aware of and consciously disregarded a substantial and unjustified risk that significant harm would occur as a result of their conduct. The Court has not found that the claims of bad faith and joint venture are subject to dismissal, and the Walkers' factual allegations are sufficient to survive a motion to dismiss. Thus, the Court denies both Defendants' Motions to Dismiss on the Walkers' Third Claim for Relief: Punitive Damages.

## IV.   CONCLUSION

For the foregoing reasons,

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS ORDERED** that Defendant Gallagher and Defendant AIU's Motions to Dismiss (Docs. 7, 9) the Walkers' Complaint (Doc. 1, Ex. 4) are **DENIED**.

Dated this 11th day of December, 2023.

*James A. Teilborg*
Senior United States District Judge