**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Walker, et al., | No. CV-23-01641-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| AIU Insurance Company, et al., | |
| Defendants. | |

Pending before the Court is Defendant AIU Insurance Company's and Defendant Gallagher Basset Service Incorporated's (collectively, "Defendants") Motion for Protective Order, which attaches a privilege log and copies of the claim file with corresponding redactions. (Doc. 60, Doc 60-1, Doc. 60-2). Plaintiffs Donald and Judith Walker (collectively, "Plaintiffs") have responded (Doc. 62) and provided additional copies of the claim file. (Doc. 60-1, Doc. 60-2, Doc. 60-3, Doc. 60-4, Doc. 60-5, and Doc. 60-6). Defendants have replied (Doc. 63). Also pending before the Court is Plaintiffs' Motion to Supplement their Response (Doc. 64), to which Defendants have responded (Doc. 66), and Plaintiffs have replied (Doc. 68). The Court now rules.

**I.  BACKGROUND**

In brief summation, Plaintiff Donald Walker sued Defendants for bad faith and punitive damages regarding Defendants' adjustment of his workers' compensation claim; Judith Walker has a loss of consortium claim. In late May 2024, the parties became engaged in a discovery dispute involving "Claim Note Redactions" in the insurance claim file.

(Doc. 51). Plaintiffs sought "an Order compelling unredacted copies of 7 series of claim notes." (Doc. 51 at 1; Doc. 54 at 1). Defendants argued that all redacted portions of the claim file were protected by attorney-client privilege. (Doc. 54 at 1–2; *see generally* Doc. 51). Plaintiffs countered that the redacted portions reflected "adjusting" work delegated to the attorney and were therefore not entitled to attorney-client privilege protection. (Doc. 51 at 2; Doc. 54 at 2).

After reviewing the parties' dispute, the Court issued an order on June 5, 2024, specifying that within 21 days, Defendants must file a notice indicating whether they would assert or waive the defense of advice of counsel. (Doc. 54 at 6). The Court's Order also specified that, should Defendants waive this defense, within 28 days, Defendants must file a motion for protective order for "each note/document" over which they asserted the attorney-client privilege. (*Id.* at 7). Additionally, to guide their briefing, for each item Defendants sought to protect through attorney-client privilege, the Court ordered Defendants to apply the eight-part test of *United States v. Ruehle*—namely, that attorney-client privilege exists:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

(*Id.* at 4–5) (quoting 583 F.3d 600, 607 (9th Cir. 2009)).

To further guide the parties' briefing, the Court's Order also required that Defendants include with their motion a privilege log as to the items at issue, incorporating:

> (1) the attorney and client involved; (2) the nature of the document (i.e., letter, memorandum); (3) all persons or entities shown on the document to have received or sent the document; (4) the date the document was generated, prepared, or dated; and (5) information on the subject matter or each document.

(*Id.* at 5) (quoting *Briggs v. Cnty. Of Maricopa*, No. CV-18-02684-PHX-EJM, 2021 WL 1192819, at *6 (D. Ariz. Mar. 30, 2021) (citing *Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655 at *5 (D. Ariz. Aug. 9, 2013)). For their part, the Court ordered Plaintiffs to include with their response to Defendants' motion a proposed form of order

detailing each item they sought to have unredacted. (*Id.* at 7).

Pursuant to the Court's Order, Defendants filed a notice on June 25, 2023, waiving the ability to assert an advice of counsel defense and indicating their intent to maintain their claims of attorney-client privilege for the redacted items remaining at issue. (Doc. 62). Subsequently, Defendants filed a motion for protective order (Doc. 60), attaching a redacted copy of the claim file (Doc. 60-2) and a privilege log (Doc. 60-1). The items identified in Defendants' privilege log include nine claim note entries[1] (Bates DEF 87, 99, 143, 144, 150, 151, 152, 164, and 165). *Id.*

## II. LEGAL STANDARD

The parties raise the issue of whether the attorney-client privilege applies to the communication items included in Defendants' privilege log. In diversity cases such as this, state law governs the issue of attorney-client privilege. *Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 644–45 (D. Ariz. 2005); *see also* Fed. R. Evid. 501. ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Under Arizona law, attorney-client privilege is governed by statute and the case law interpreting it. *Roman Catholic Diocese v. Superior Court*, 62 P.3d 970, 972 (2003). In Arizona, the attorney-client privilege is codified at A.R.S. § 12-2234. *Centex Homes v. NGM Ins. Co.*, CT-19-01392-PHX-MTL, 2020 WL 5593759, at *1 (D. Ariz. Aug. 18, 2020). The attorney client-privilege protects only communications that are "made to or by [a] lawyer for the purpose of securing or giving legal advice[.]" *Id.* (citing *Samaritan Found. v. Goodfarb*, 863 P.2d 870, 874 (Ariz. 1993)). In effect, not all communications to [or from] one's lawyer are privileged. *Id.* Because the attorney-client privilege "impedes full and free discovery of the truth," it is strictly construed. *Roman Catholic Diocese*, 62 P.3d at 975.

---

[1] In compliance with the Court's Order, Plaintiffs also attached a proposed form of order with their response to Defendants' motion (Doc. 62-6). In their proposed order, Plaintiffs identify eight claim note entries which they seek to have unredacted. (*Id.*) These eight claim note entries ultimately correspond with the nine claim note entries Defendants list in their privilege log (Doc. 60-1), as Plaintiffs' proposed order combines two of these claim note entries—Bates DEF 143 and Bates DEF 144—into one: "the email chain at Bates pages DEF 143–44." (*Id.*; Doc. 62-6). Therefore, it appears the parties agree upon which items of communication are currently at issue.

- 3 -

The proponent of attorney-client privilege for a given communication bears the burden to establish its privileged nature by making a prima facie showing that the privilege applies. *Evanston Ins. Co. v. Tracey Portee Murphy*, No. CV-19-04954-PHX-MTL, 2020 WL 6048206, at *2 (D. Ariz. Oct. 13, 2020) (citing *State ex rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336 (1976)). If this initial burden is met, the burden then shifts to the party seeking to pierce attorney-client privilege to show that an exception or waiver applies. *Id.* (citing *U.S. Inspection Servs., Inc. v. NL Eng'red Sols., LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010)). To make a prima facie showing of attorney-client privilege, the party seeking to assert privilege must show that: "1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential." *Id.* (quoting *Clements v. Bernini in & for Cnty. Of Pima*, 471 P.3d 645, 651 ¶ 8 (Ariz. 2020)). The second element restricts attorney-client privilege to communications seeking or providing legal advice. *Clements*, 471 P.3d at 440 ¶ 10. To establish the second element, the proponent must adequately explain how the circumstances indicate the communication was made for this purpose. *Id.*

In reviewing an assertion of attorney-client privilege, a court maintains broad discretion under Arizona law. *Reynolds v. Liberty Mutual Ins. Co.*, No. CV-16-00020-TUC-JGZ, 2017 WL 6415360 at *3 (D. Ariz. May 23, 2017) (citing *State Farm Mut. Auto Ins. Co. v. Lee*, 13 P.3d 1169, 1174 (Ariz. 2000)). This discretion includes the right to weigh competing interests, draw inferences where conflicting inferences are possible, and decide controverted factual issues. *Id.*

**III.    ANALYSIS**

Defendants seek to protect from disclosure all redacted portions of the claim note entries identified in their privilege log, on the basis that each communication falls under the protection of attorney-client privilege. (*see generally* Doc. 60; Doc. 63). In response, Plaintiff raises two primary arguments: (1) Defendants have failed to establish that the communications at issue "are within the scope of attorney-client privilege or protected by

work product;" and (2) even if either attorney-client privilege or work product privilege applies, Defendants have implicitly waived privilege because the communications at issue contain "the only factual investigations and evaluations" on which Defendants could rely for claim adjustment. (Doc. 62 at 1–2). The Court considers each claim in turn.

### A. Attorney-Client Privilege

Defendants maintain that they have established attorney-client privilege for each of the items of communication listed in their privilege log. (*See* Doc. 60 at 4, 6–10; Doc. 60-1; Doc. 62). After reviewing Defendants' briefs (Doc. 60; Doc. 62), privilege log (Doc. 60-1), and corresponding claim note entries in redacted form (Doc. 60-2), the Court has determined that Defendants have adequately established three elements toward a showing of attorney-client privilege for each item of communication at issue: 1) there is an attorney-client relationship present, 2) the communication was made in confidence, and 3) the communication was treated as confidential.[2] *Clements*, 471 P.3d at 440 ¶ 8.

Plaintiffs contend, however, that Defendants have failed to establish attorney client-privilege because their privilege log is "deficient," and Defendants "have not demonstrated 'how the circumstances indicate [each] communication was made to secure or provide legal advice.'" (Doc. 62 at 3) (citing *Clements*, 471 P.3d at 440 ¶ 10). Instead, Plaintiffs argue, the communications in Defendants' privilege log are not privileged because Defendants' defense counsel was performing claims adjustment, and the communications at issue were a product of ordinary business functions. (*See id.* at 4–10; 13–16).

The Court has determined that the claim note entries included in Defendants'

---

[2] In their Motion (Doc. 60 at 3), Defendants request that the Court reconsider the instructions in its previous Order that Defendants produce unredacted versions of emails that copied Plaintiffs' employer, Cemex, a third party to this proceeding. (Doc. 54 at 3). In support of their request for reconsideration, Defendants invoked the common interest doctrine, arguing that Cemex and Defendants held a common interest in "funding or adjusting Plaintiff's workers' compensation claim," and therefore, "privilege is not waived." (*Id.* at 3–4). However, after making this request in their motion filed July 2, 2024, pursuant to the Court's Order, Defendants provided Plaintiffs with claim note entries which included the unredacted emails involving Cemex (portions of Bates DEF 144 and the entirety of Bates DEF 145) (Doc. 62-5), "even though Defendants maintain that communications between Cemex and [Defendants' defense counsel] should remain privileged under the common interest doctrine." (Doc. 63 at 7). However, because Defendants produced these emails, the Court has determined that reconsideration of the Court's instructions to Defendants is unnecessary.

- 5 -

privilege log fall into three primary categories. Therefore, the Court's analysis will consider each of these categories with the goal of ascertaining whether their purpose was to obtain or provide legal advice.

### a. Category One: Bates DEF 87 and 164

The first category of claim note entries in Defendants' privilege log consists of the communications contained in Bates DEF 87 (4/5/22; 15:50) and Bates DEF 164 (1/24/23; 09:30). These communications are summaries of a deposition and an initial hearing, respectively, and they do not appear to have been made for the purpose of securing or providing legal advice. Thus, the Court has concluded that the claim note entries in Category One do not fall within the scope of attorney-client privilege.

Defendants' privilege log describes Bates DEF 87 as follows: "Litigation update (Legal advice). Summary of communication between … [Gallagher employee] and [defense counsel] regarding deposition testimony." (Doc. 60-1 at 1). The first line of Bates DEF 99 reads, "Litigation Update/post depo," and the remaining text is redacted. (Doc. 60-2). Defendants state in their briefing that this claim note entry is "a summary of the legal communication updating the client from [defense counsel], a licensed legal professional, describing the work he has performed on behalf of his clients." (Doc 60 at 7).

Defendants describe Bates DEF 164 in their privilege log as, "[c]laim note summarizing litigation update from [defense counsel] (legal advice)." (Doc. 60-1 at 2). The first line of Bates DEF 164 reads, "Litigation Update/Summary of Initial Hearing," and the remaining text is redacted. (Doc. 60-2 at 8). In their briefing, Defendants further describe this claim note entry as "a privileged communication from [defense counsel] concerning the activities in his representation of Defendants in Plaintiff's workers' compensation administrative proceedings." (Doc. 60 at 9).

Plaintiff's general assertion is that Defendants "have not demonstrated 'how the circumstances indicate [each] communication was made to secure or provide legal advice.'" (Doc. 62 at 3) (citing *Clements*, 471 P.3d at 440 ¶ 10). Specifically, here, Plaintiffs argue that Bates DEF 87, dated April 5, 2022, "appears to be the fruit" of a

deposition that, during a February 2022 Industrial Commission of Arizona ("ICA") hearing, Defendants' defense counsel stated that he was going to take of Plaintiff Donald Walker. (*Id.* at 13). Regarding Bates DEF 164, Plaintiffs state that the "summary of initial hearing" is deposition testimony from Plaintiff Donald Walker about his current medical state, which is "the only investigation with [Plaintiff] as to his need for medical benefits." (*Id.* at 16).

Here, the Court agrees with Plaintiffs' assertion that Defendants have failed to demonstrate how Bates DEF 87 and Bates DEF 164 were made to secure or provide legal advice. In the Court's estimation, summaries of legal activities, such as depositions and initial hearings, do not equate to legal advice. And because Defendants have not provided information sufficient to show otherwise, they have not met their burden to establish attorney-client privilege. *Clements*, 471 P.3d at 440 ¶ 10. ("[attorney-client] privilege applies only to those communications involving legal advice"); *McCormick v. United States*, No. CV 05-118 TUC RCC, 2006 WL 8440318, at *3 (D. Ariz. Feb. 6, 2006) ("Failure to provide sufficient information may constitute a waiver of the privilege."); *see also Ruehle*, 583 F.3d at 609 ("failure to define the scope of …[the] claim of privilege weighs in favor of disclosure").

Accordingly, the Court finds that Defendants have not sustained their burden to establish a prima facie showing of attorney-client privilege for the items in Category One: Bates DEF 87 (4/5/22; 15:50) and Bates DEF 164 (1/24/23; 09:30).

### b. Category Two: Bates DEF 99, 152, and 165

The second category of claim note entries in Defendants' privilege log consists of the communications contained in Bates DEF 99 (4/29/22; 11:13), Bates DEF 152 (10/19/22; 13:30), and Bates DEF 165 (1/24/23; 09:44). These three entries summarize legal advice provided by Defendants' defense counsel. The Court has determined that the claim note entries in Category Two fall within the scope of attorney-client privilege.

Defendants indicate in their privilege log that Bates DEF 99 is a "[s]ummary of direction of legal action and advice between [Gallagher employee] and [defense counsel]."

(Doc. 60-1 at 1). The first half of the entry reads, "Received wage info from [employee] with Cemex. Contacted [defense counsel,]" and the remaining half of the content is redacted. (Doc. 60-2 at 2). Defendants state in their briefing that the redacted portion of Bates DEF 99 "recaps the discussion and advice given by [defense counsel,]" and that "the entry summarizes the legal advice given by a professional legal advisor in the course of his representation of Defendants in the workers' compensation administrative proceedings." (Doc. 60 at 8).

Bates DEF 152 is described in Defendant's privilege log as a "[c]laim note entry summarizing [a] conference call with [defense counsel] regarding litigation update (legal advice)." (Doc. 60-1 at 2). Other than the entry date, subject, and author, Bates DEF 152 is fully redacted. (Doc. 60-2 at 7). Defendants further describe Bates DEF 152 in their briefing as, "[documentation] of a telephone call with [defense counsel] wherein he provided legal advice concerning his representation of Defendants in the administrative workers' compensation proceeding filed by Plaintiff." (Doc. 60 at 9).

Defendants describe Bates DEF 165 in their privilege log as "[c]laim note entry summarizing litigation update and strategy from [defense counsel] (legal advice)." (Doc. 60-1 at 2). The first two lines of Bates DEF 165 read, "Diary Review/POA" and "Plan of Action," and the rest of the entry's content contains only partial redactions. (Doc. 60-2 at 9).[3]

Again, the Court weighs Defendants' claims against Plaintiff's overarching assertion that Defendants "have not demonstrated 'how the circumstances indicate [each] communication was made to secure or provide legal advice.'" (Doc. 62 at 3) (citing *Clements*, 471 P.3d at 440 ¶ 10). Plaintiffs also suggest that the claim note entries in Category Two are reflective of adjusting functions, rather than legal advice. Specifically,

---

[3] Although Defendants include Bates DEF 165 (1/24/23; 09:44) as a separate entry in their privilege log, they do not provide additional description of this claim note entry in their briefing. (*see generally* Doc. 60; Doc. 63). Similarly, while Plaintiffs include Bates DEF 165 (1/24/23; 09:44) as a separate requested item in their Proposed Order (Doc. 62-6), in their briefing, they do not provide any additional argument against Bates DEF 165 as an attorney-client privileged communication. (*See generally* Doc. 62). Nonetheless, the Court makes its determination based on the information provided.

Plaintiffs assert that Bates DEF 99 "most likely involves deferring simple mathematical calculations to counsel or using the dispute for leverage or delay." (*Id.* at 14). Additionally, per Plaintiff, the timing of Bates DEF 152 "coincides with the Defendants' responsibility to pay estimated permanent partial disability (PPD) benefits." (*Id.* at 15).

Here, the Court agrees with Defendants' claim that these three entries are privileged. Defendants provide descriptive information in their privilege log and briefing[4] sufficient to show how the circumstances suggest that the redacted portions of Bates DEF 99, Bates DEF 152, and Bates DEF 165 all document legal advice that Defendants' defense counsel provides. Also, the nature of the legal advice the defense counsel provided is clear from Defendants' log and descriptions. *See Briggs*, 2021 WL 1192819, at *6 (requiring a party to provide adequate "information on the subject matter" of a communication to support a claim of attorney-client privilege); *Games2U, Inc.*, 2013 WL 4046655 at *5 (same).

In addition, the Court notes that Bates DEF 99 and Bates DEF 165 are only partially redacted on attorney-client privilege grounds. This, combined with Defendants' descriptions in their privilege log and briefing, suggests that Defendants reviewed the claim note entries and only redacted the portions that documented the seeking or provision of legal advice. *See Reynolds*, 2017 WL 6415360, at *4 (noting that claim note entries partially redacted on attorney-client privilege suggested "that Defendant has reviewed the claim notes and only redacted the entries that satisfied all the elements of privilege").

Further, the Court finds Plaintiffs' argument that the claim note entries in Category Two are reflective of claim adjustment functions—e.g., that Bates 99 "most likely involves deferring mathematical calculations to counsel"—to be speculative. This conjecture is insufficient to overcome Defendants' claim of privilege. *See id.* (indicating that a party seeking to defeat a claim of attorney-client privilege must hinge his argument on more than a hunch).

Accordingly, the Court finds that Defendants have sustained their burden to establish a prima facie showing of attorney-client privilege for the items in Category Two:

---

[4] To clarify, Defendants' briefing for Bates DEF 99 and 152.

- 9 -

Bates DEF 99 (4/29/22; 11:13), Bates DEF 152 (10/19/22; 13:30), and Bates DEF 165 (1/24/23; 09:44).

### c. Category Three: Bates DEF 143, 144, 150, and 151

The third and final category of claim note entries remaining at issue consists of the communications contained in Bates DEF 143 (two [2] emails dated 10/17/22, at 10:24 & 10:31; three [3] emails dated 10/10/22, at 12:54, 01:32, & 01:54; and one [1] email dated 10/18/22, at 10:32); Bates DEF 144 (two [2] emails dated 10/18/22, at 10:28 & 10:30); Bates DEF 150 (10/19/22; 13:16); and Bates DEF 151 (10/19/22; 13:17). These entries, according to Defendant, "contain," "concern," "document," or "reflect requests for" legal advice. (Doc. 60 at 8). Regardless, on this record, the Court cannot determine whether any of the claim note entries in Category Three fall within the scope of attorney-client privilege.

Defendants privilege log describes Bates DEF 143 as "[e]mails between … [Gallagher employee] and [defense counsel] concerning legal advice. [Defense counsel's] paralegal … is also included in the email string. Emails relate to reissuance of a check." (Doc. 60-1 at 1). At the top of the e-mail chain is the title: "Legal Email DA Re: Reissued FCE Check." (Doc. 60-2 at 3). Other than the author, recipient, date, and subject, the content of each of the emails contained in Bates 143 is redacted. (*Id.*).

Per Defendant's privilege log, Bates DEF 144 consists of "[c]opies of emails with defense counsel … (contains legal advice). This is an email string with [emails to and from defense counsel's paralegal and a Gallagher employee]." (Doc. 60-1 at 1). Again, other than the author, recipient, date, and subject, the content of each of the emails contained in Bates 144 is redacted.[5] (Doc. 60-2 at 4).

In their briefing, Defendants state that the email chains in both DEF 143 and Bates DEF 144 "reflect requests for advice and corresponding advice from [defense counsel] concerning the litigation over Plaintiff's workers compensation claim." (Doc. 60 at 8). Defendants assert that "instead of redacting the notes in their entirety," they left the author

---

[5] Except for the portions of Bates DEF 144 containing emails that copy Plaintiff Donald Walker's employer, Cemex, which Defendants produced in unredacted form per the Court's previous Order. (Doc. 54; Doc. 62-5 at 2, 3).

and recipient intact so that the participants of the emails could be identified, redacting only "privileged attorney-client communications." (*Id.*)

As described in Defendant's privilege log, Bates DEF 150 and Bates DEF 151 are each "[c]laim note entr[ies] documenting legal advice from [defense counsel]." (Doc. 60-1 at 1–2). Bates DEF 150 is titled, "Legal," and except for the entry date and author, is completely redacted. (*Id.* at 1). Bates DEF 151 includes the date and author, is titled "Supervision," and its first line reads, "R/T with DA, Client, and [Gallagher employee]." (*Id.* at 2). Its remaining content is completely redacted. (*Id.*) Defendants state that these two entries both "concern legal advice and communications with [Defendants' defense counsel]. (Doc. 60 at 10).

In addition to Plaintiffs' general assertion that that Defendants "have not demonstrated 'how the circumstances indicate [each] communication was made to secure or provide legal advice'" (Doc. 62 at 3), Plaintiffs also argue that the emails contained in Bates DEF 143 & 144 "appear to deal with payment for a functional capacity evaluation," and "upon information and belief…Defendants wanted to block this evaluation because it would support a loss of earning capacity for disability benefits." (*Id.* at 14). Additionally, Plaintiffs also state that the redacted portions of the emails in Bates DEF 144 "are believed to relate to the Defendants' resistance to paying permanent partial disability (PPD) benefits." (*Id.* at 15). Once again, the Court finds Plaintiffs' claims regarding the potential alternative content of these claim note entries to be speculative and insufficient to overcome Defendants' claim of privilege. *See Reynolds*, 2017 WL 6415360, at *4 (indicating that a party seeking to defeat a claim of attorney-client privilege must hinge his argument on more than a hunch).

Nonetheless, the Court has concluded that on this record, it cannot determine whether any of the claim note entries in Category Three are subject to attorney-client privilege. While Defendants maintain that the claim note entries in this Category "contain," "concern," "document," or "reflect requests for" legal advice (Doc. 60 at 8; Doc. 60-1), unlike the claim note entries in Category Two, information about the subject matter of the

legal advice within the entries in Category Three is either vague or absent. Further, unlike the entries in Category Two, it is not evident that Bates DEF 150 and Bates DEF 151 were made with the intent of seeking or providing legal advice. Thus, what remains unclear to the Court is the subject of the legal advice provided or sought in each entry— and how the circumstances suggest that the purpose of each entry was to "secure or provide legal advice." *Clements*, 471 P.3d at 440 ¶ 10.

In addition, Defendants suggest that because they did not redact the email chains contained in Bates DEF 143 and Bates DEF 144 "in their entirety," this means that the reacted portions contain only "privileged attorney-client communications." (Doc. 60 at 8). However, the Court remains unconvinced. Partially redacted content can weigh toward a finding that the redacted information is privileged, as was the case for two of the claim note entries in Category Two. *See Reynolds*, 2017 WL 6415360, at *4 (noting that claim note entries partially redacted on attorney-client privilege suggested "that Defendant … only redacted the entries that satisfied all the elements of privilege"). However, here, unlike the unredacted portions of the entries of Category Two, the unredacted portions in the emails of Bates DEF 143 and Bates DEF 144 do not offer any insight into the substance of the remaining redacted content. (Doc. 60 at 8) ("Defendants left the to/from lines of each email so that Plaintiff could identify the participants involved in the emails.") This does not indicate to the Court that Defendants "only redacted the entries that satisfied all the elements of privilege." *Reynolds*, 2017 WL 6415360, at *4

Accordingly, the Court finds that Defendants have not yet sustained their burden to establish a prima facie showing of attorney-client privilege for the items in Category Three. Consequently, Plaintiffs and Defendants will be required to again meet and confer. For the meet and confer, Defendants will be required to produce a supplemental privilege log (only as to Bates DEF 143 (two [2] emails dated 10/17/22, at 10:24 & 10:31; three [3] emails dated 10/10/22, at 12:54, 01:32, & 01:54; and one [1] email dated 10/18/22, at 10:32); Bates DEF 144 (two [2] emails dated 10/18/22, at 10:28 & 10:30); Bates DEF 150 (10/19/22; 13:16); and Bates DEF 151 (10/19/22; 13:17)), again including the five

categories listed in *Games2U* and *Briggs* as instructed in the Court's previous Order (Doc. 60 at 5). Defendants must ensure that the log contains sufficient detail regarding the subject of the legal advice and "how the circumstances indicate [each] communication was made to secure or provide legal advice." *Clements*, 471 P.3d at 440 ¶ 10. For example: "Defense counsel provided legal advice regarding deposition preparation to Gallagher employee."

If, after the meet and confer, the parties are still unable to agree upon whether the redacted portions of the claim note entries in Defendants' supplemental privilege log are privileged, Defendants must file a second motion for protective order. As specified in the Court's previous Order (Doc. 54 at 5), Defendants must again apply the eight-part test of *Ruehle* for every item Defendants continue to seek to protect. Additionally, Defendants must include a copy of the supplemental privilege log with their second motion.

### B.  Implied Waiver of Attorney-Client Privilege

If the proponent of attorney-client privilege has met its initial burden to make a prima facie showing of the privilege, the burden then shifts to the party advocating for disclosure to show that an exception or waiver applies. *Evanston Ins. Co.*, 2020 WL 6048206, at 2 (citing *U.S. Inspection Servs., Inc. v. NL Eng'red Sols., LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010)). As discussed above, Defendants have filed a notice waiving their ability to assert an advice of counsel defense, thereby indicating their intent to maintain their claims of attorney-client privilege for the redacted items remaining at issue. (Doc. 62).

Plaintiffs argue that regardless, Defendants have still impliedly waived attorney-client privilege because "waiver is not limited to an affirmative assertion of a defense that relies on attorney-client advice," (Doc. 62 at 10) and the "only factual investigations and evaluations" on which Defendants could rely for adjusting Plaintiffs' workers' compensation claim "are contained in attorney-client communications." (*Id.* at 1–2). Thus, Plaintiffs state, Defendants' claim decisions are necessarily "reliant upon the attorney's work." (*Id.* at 10).

Relying on *State Farm Mutual Ins. Co v. Lee* and *Mendoza v. McDonald's*, Plaintiffs

argue in essence that because Defendants' claim decisions are reliant on the attorney's work, by asserting any defense involving factual assertions related to their claim decisions, Defendants are implicitly waiving attorney-client privilege. (*See id.* at 10–12) (quoting 13 P.3d 1169, 1178 (Ariz. 2000) (citation omitted) ("[w]here, however, an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party an opportunity to uncover the foundation for those assertions in order to contradict them"); 213 P.3d 288, 302 (Ariz. Ct. App. 2009) (quoting *id.*) (citations omitted) ("when an insurer raises a defense based on factual assertions that, either explicitly or implicitly, incorporates the advice or judgment of its counsel, 'it cannot deny an opposing party an opportunity to uncover the foundation for those assertions in order to contradict them'")).

Defendants counter that Plaintiffs' reliance on *Lee* and *Mendoza* (which itself relies on the Arizona Supreme Court's reasoning in *Lee*) is misplaced. (Doc. 63). The Court agrees. Plaintiffs appear to misconstrue the scope of the implied waiver of attorney-client privilege. In *Lee*, the Arizona Supreme Court clarified that to waive the privilege, a party must do more than confer with counsel and act based on counsel's advice. *Everest Indem. Ins. Co. v. Rea*, 342 P.3d 417, 419 (Ariz. Ct. App. 2015) (citing 13 P.3d at 1183). Waiver of attorney-client privilege is implied only when a party affirmatively "asserts a claim or defense that is dependent upon the advice or consultation of counsel." *Id.* Defendants make no such assertion their briefing and in fact, achieved the opposite by waiving the ability to assert an advice of counsel defense. (Doc. 62); *Lee*, 13 P.3d at 1175 (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)) (stating that for implied waiver of attorney-client privilege to exist, there must be "an assertion of the privilege [through] some affirmative act, such as [raising an affirmative defense], by the asserting party"); *see also Twin City Fire Ins. Co. v. Burke*, 63 P.3d 282, 287 (2003) (finding that no waiver of privilege occurred when party had not "affirmatively injected any advice it received from counsel into the bad faith action").

Moreover, even if, as Plaintiffs suggest, Defendants relied on the "attorney-client

- 14 -

communications" containing the "only factual investigations and evaluations" available in adjusting Plaintiffs' workers' compensation claim (Doc. 62 at 1–2), there is no indication that these "factual investigations and evaluations" necessarily constitute "advice or consultation" from counsel. The Court's prior order addressed that these investigations will be precluded. (Doc. 54 at 6).

Consequently, the Court finds that currently, Defendants have not impliedly waived the attorney-client privilege, and Plaintiffs have not sustained their burden to show that an exception or waiver applies to any communications protected by attorney-client privilege. Again, however, as the Court cautioned in its previous Order (*Id.*), for all items over which Defendants ultimately prevail on their claim of attorney-client privilege, they will not be allowed to use those actions by counsel to aid in their defense in any way. *See Briggs*, 2021 WL 1192819, at *7 n. 10, quoting *Chevron Corp v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("[T]he privilege which protects attorney-client communications may not be used both as a sword and a shield, and where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be impliedly waived." (cleaned up)).

### C. Work Product Protection

Plaintiffs also argue that because "there is sparse investigative and no evaluation activity by the claims office disclosed in the claim notes" (Doc. 62 at 5), these activities are necessarily contained within attorney-client communications. (*See Id.* at 5–10). Plaintiffs assert that to prove their bad faith claims, the need for this information from the claim notes is "not only substantial, but overwhelming." (*Id.* at 5) (quoting *Brown v. Superior Court*, 670 P.2d 725, 734 (Ariz. 1983) ("Bad faith can only be proved by showing exactly 'how the company processed the claim, how thoroughly it was considered and why the company took the action it did.'")). The Court presumes Plaintiffs make these assertions with the intent of overcoming work-product privilege.[6]

---

[6] To clarify, even if the attorney-client communications at issue did contain evaluations or investigations necessary for Plaintiffs to establish their bad faith claim, this would not serve to waive attorney-client privilege. *Flowers-Carter v. Braun Corp.*, No. CV-18-03836-PHX-DWL, 2020 WL 2319935, at *14 (D. Ariz. May 11, 2020) (citing *Admiral Ins. Co.*

- 15 -

However, the Court notes that for each of eight of the nine claim note entries their privilege log, Defendants list "Attorney-client; work product" as the type of privilege under which they seek protection.[7] (Doc. 60-1). Additionally, in their briefing (Doc. 60 at 7), Defendants include Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, which pertains to work-product protection ("a party may not discover documents … that are prepared in anticipation of litigation or for trial"). But Defendants do not identify Rule 26(b)(3)(A) in relation to work-product protections; rather, they include Rule 26(b)(3)(A) as part of their explanation of the standard of review for attorney-client privilege. (Doc. 60 at 7). Furthermore, Defendants provide no additional explanation as to why work-product protection would apply to any of the claim note entries in either their privilege log or in their briefing. (*See generally* Doc. 60; Doc. 60-1; Doc. 63). Hence, Defendants have not provided enough information to establish work-product protection. *See Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 472 (D. Ariz. 2001) ("The burden of establishing protection of alleged work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion.").

Thus, the Court considers Defendants to have waived work-product protection for the items of communication in dispute, and consequently, the Court need not examine this issue further in the present analysis.

**D. *In Camera* Review**

The Court has noted Defendants' offer to produce the claim note entries at issue in unredacted form to the Court for *in camera* review. (Doc. 60 at 6–7) ("Defendants … will provide the unredacted copies [of the claim note entries] to the Court for *in camera* review."); (Doc. 63 at 2) ("Defendants have previously offered in their Motion to submit the content of the withheld privileged communications for an *in camera* review.").

---

*v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494-95 (9th Cir. 1989). (stating that although "substantial need" may provide a basis for overcoming the work-product doctrine, it does not provide a basis for piercing the attorney-client privilege).

[7] For the remaining claim note entry, Bates DEF 165 (1/24/23; 09:44), the privileges under which Defendants seek protection are: "Attorney-Client; Proprietary; Trade Secret." However, the Court finds that Bates DEF 165 (1/24/23; 09:44) is protected by attorney-client privilege. Thus, the Court need not analyze whether Defendants' "Proprietary" and "Trade Secret" claims apply.

However, the Court views an *in camera* review as an unacceptable substitute for an adequately descriptive privilege log. As such, the Court declines to conduct an *in camera* review of any of the disputed claim note entries included in Defendants' privilege log. *See Moore. v. Garnand*, 2020 WL 1432838 at *5 (D. Ariz. Mar. 24, 2020) (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)) ("the decision whether to conduct the *in camera* review rests within the sound discretion of [the Court]").

### E. Plaintiffs' Motion to Supplement

Plaintiffs seek to supplement their Response to Defendants' Motion for Protective Order with the deposition testimony of two of Defendants' claims adjustors, which occurred after the Response was filed. (Doc. 64). Plaintiffs argue that the deposition testimony demonstrates that "the adjustors claim not to know what their thought process was during times claims notes are redacted, or how much of the claim handling investigation, evaluation, and decisions they left to counsel." (*Id.*) Given this, per Plaintiffs, "counsel's participation, and [Defendants' claim note entry redactions], serve as both sword and shield." (*Id.*) However, the Court's present analysis does not rely on the claims adjusters' thought processes or knowledge during the claim adjustment period, nor does it rely on examining the proportion of "adjusting" function left to counsel. Therefore, although the Court grants Plaintiffs' Motion to Supplement, the Court finds that the supplemental evidence does not alter its analysis.

In consideration of the foregoing,

**IT IS ORDERED** that Defendants' Motion for Protective Order filed on July 2, 2024 (Doc. 60), is **DENIED** for claim note entries: Bates DEF 87 (4/5/22; 15:50) (Doc. and Bates DEF 164 (1/24/23; 09:30). Defendants shall produce complete and legible unredacted copies of Bates DEF 87 (4/5/22; 15:50) and Bates DEF 164 (1/24/23; 09:30) to Plaintiffs within seven [7] days of the date of this Order.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order filed on July 2, 2024 (Doc. 60), is **GRANTED** for claim note entries: Bates DEF 99 (4/29/22; 11:13); Bates DEF 152 (10/19/22; 13:30); and Bates DEF 165 (1/24/23; 09:44).

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order filed on July 2, 2024 (Doc. 60), is **DENIED WITHOUT PREJUDICE** for claim note entries: Bates DEF 143 (two [2] emails dated 10/17/22, at 10:24 & 10:31; three [3] emails dated 10/10/22, at 12:54, 01:32, & 01:54; and one [1] email dated 10/18/22, at 10:32); Bates DEF 144 (two [2] emails dated 10/18/22, at 10:28 & 10:30); Bates DEF 150 (10/19/22; 13:16); and Bates DEF 151 (10/19/22; 13:17).

**IT IS FURTHER ORDERED** that Defendants shall produce, within seven [7] days of this Order, a supplemental privilege log for claim note entries: Bates DEF 143 (two [2] emails dated 10/17/22, at 10:24 & 10:31; three [3] emails dated 10/10/22, at 12:54, 01:32, & 01:54; and one [1] email dated 10/18/22, at 10:32); Bates DEF 144 (two [2] emails dated 10/18/22, at 10:28 & 10:30); Bates DEF 150 (10/19/22; 13:16); and Bates DEF 151 (10/19/22; 13:17). The parties shall meet and confer within 14 days of the date of this Order to discuss whether the redactions within each claim note entry in Defendants' supplemental privilege log are subject to attorney-client privilege.

**IT IS FURTHER ORDERED** that if, after the parties meet and confer, the parties are unable to agree upon whether the redacted portions of the claim note entries in Defendants' supplemental privilege log are privileged, Defendants must file a second motion for a protective order for each claim note entry over which they continue to assert the attorney-client privilege within 28 days of this Order. Plaintiffs must respond within seven [7] days of Defendants' filing. Defendants may reply within three [3] days of response.

**IT IS FURTHER ORDERED** that the Motion to Supplement Plaintiff's Response to Defendants' Motion for Protective Order (Doc. 64) is **GRANTED**.

Dated this 1st day of October, 2024.

_____
James A. Teilborg
Senior United States District Judge